25CA1603 Peo in Interest of SRT 08-13-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1603
Boulder County District Court No. 21JV517
Honorable Robert R. Gunning, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.R.T., a Child,

and Concerning M.N.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by CHIEF JUDGE TOW
Harris and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

---

Ben Pearlman, County Attorney, Jeanne Banghart, Deputy County Attorney, Mary L. Athey, Assistant County Attorney, Boulder, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect action, M.N. (father) appeals the judgment terminating his parent-child legal relationship with S.R.T. (the child).  We affirm.

## I.    Background

¶ 2    In 2021, the Boulder County Department of Housing and Human Services (the Department) filed a petition in dependency and neglect alleging that the child was born exposed to illegal substances.  The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for both parents.

¶ 3    In 2022, the Department moved to terminate father's parental rights.[1]  The juvenile court terminated father's parental rights on the Department's motion for summary judgment in October 2022.  However, a division of this court reversed the termination of father's parental rights in July 2023.  *See People in Interest of S.R.T.*, (Colo. App. No. 22CA1843, July 6, 2023) (not published pursuant to C.A.R. 35(e)).

---

[1] The Department also moved to terminate mother's parental rights.  After mother confessed the motion, the juvenile court terminated her rights.  Mother is not a part of this appeal.

¶ 4     On remand, father reengaged in the dependency action. The juvenile court adopted an amended treatment plan for father in December 2023. In May 2024 the child's guardian ad litem moved to terminate father's parental rights. Four years after the petition was filed and almost two years after the case was remanded, the juvenile court terminated father's parental rights following a contested hearing.

## II.     Reasonable Efforts

¶ 5     Father contends that the juvenile court erred by finding that the Department made reasonable efforts. We disagree.

### A.     Relevant Law and Standard of Review

¶ 6     Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2025, a department must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. Reasonable efforts means the "exercise of diligence and care" for a child who is in, or in imminent risk of, out-of-home placement. § 19-1-103(114). The Department meets this standard when it provides services in accordance with section 19-3-208. § 19-1-103(114).

2

¶ 7     To evaluate whether a department made reasonable efforts, the juvenile court should consider whether the provided services were appropriate to support the parent's treatment plan.  *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  Whether a department made reasonable efforts is "measured holistically" rather than by reference to each treatment plan objective.  *People in Interest of E.D.*, 2025 COA 11, ¶ 11.  A parent is ultimately responsible for using the services offered by a department, and the juvenile court "may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts."  *Id.* at ¶ 12.

¶ 8     It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).  We review for clear error the juvenile court's factual findings but review de novo its legal determination, based on those findings, as to whether a department satisfied its reasonable efforts obligation.  *E.D.*, ¶ 13.

B.     Analysis

¶ 9      The juvenile court found that the Department's "efforts to rehabilitate father were consistent and tailored to his needs."  The court found that, after the case returned on remand and the new treatment plan was adopted, the Department "undert[ook] substantial efforts to rehabilitate" father.  The court noted that, "in contrast, respondent father's engagement with the [D]epartment and use of the resources provided has been, at best, inconsistent."

¶ 10     Father first claims that the juvenile court erred by finding the Department made reasonable efforts because communication from the Department was "sporadic" and "often came in varying forms." In particular, father points to testimony that caseworkers made only forty-one percent of the monthly meetings required by the rules promulgated by the Colorado Department of Human Services in Volume 7.  *See* Dep't of Hum. Servs. Rules 7.301.22(B), 7.304.64(A), 12 Code Colo. Regs. 2509-4.

¶ 11     But as the juvenile court noted in its judgment, "strict compliance with Volume 7 is not the legal standard for reasonable efforts."  Indeed, section 19-3-208 — not the Department's regulations — identifies the services required to satisfy the

Department's reasonable efforts obligations. *See S.N-V.*, 300 P.3d at 915; *see also* § 19-3-208(2)(b) (outlining required services); § 19-3-208(2)(d) (identifying additional services that are required if sufficient funding is available). Moreover, the court acknowledged that, early in the case, the Department "struggled to locate and contact" father. But it found that beginning in the fall of 2023, the Department's efforts were not just reasonable but substantial. And father's bare mathematical argument fails to account for his share of the responsibility for the missed meetings.

¶ 12 Father next contends that he struggled with transportation at times and implies that the Department's efforts to address these struggles were insufficient. The juvenile court specifically found that father continued to miss substance testing and family time opportunities with the child even after the Department gave him "resources to overcome stated barriers," including transportation. The juvenile court also found that the Department "provided him with visitation opportunities where not prohibited by court order." Father now suggests — albeit obliquely — that, to alleviate transportation burdens, the Department should have allowed him to engage in family time at a park near his home instead of at the

Department.  But the record reveals that family time was at times authorized to occur at father's home and the park by his home, and at other times, the location of family time was restricted by the juvenile court due to safety concerns.  Father develops no argument challenging the propriety of those restrictions.

¶ 13    Father also claims that the Department did not "make any meaningful efforts to connect father with services while he was in custody" because it did not make any referrals for jail-based services.  Father appears to rely on section 19-3-508(1)(e)(III), C.R.S. 2025, for his implied contention that the Department had an obligation to do so.  This provision states that the caseworker, "upon knowledge of incarceration, shall provide information that details the services and treatment available to a parent at the facility or jail where the parent is incarcerated or the caseworker's efforts to obtain the information at the next scheduled court hearing."

¶ 14    The juvenile court found that caseworkers "attempted, but did not always succeed, in coordinating with jails" when father was in custody.  As directed by section 19-3-508(1)(e)(III), the caseworker also provided the court with a report detailing both the

Department's efforts to communicate with the jail and the services available at the jail as communicated by father. Father does not explain what more the statute requires.

¶ 15 Father also generally claims that, when he was not in custody, "the only referrals the Department made were for family time and sobriety monitoring." But the record belies father's claim. The juvenile court found that the Department also made referrals for "comprehensive substance use and mental health assessments to initiate treatment" and home-based family counseling with the child. Father declined to complete the former assessments and was discharged from the latter program after he failed to engage. Father does not identify what further referrals would have been necessary and appropriate to address the requirements of his treatment plan.

¶ 16 Because the juvenile court's findings have record support, we cannot disturb them. And based on those findings, we agree with the juvenile court that the Department provided reasonable efforts.

### III. Less Drastic Alternative

¶ 17 To the extent father seeks to challenge the juvenile court's decision to temporarily place the child with someone other than the paternal grandparents eight months before the termination hearing,

7

we note that "[i]nterlocutory orders that arise from review hearings and address the physical custody of a child but do not affect the right to legal custody are not subject to appellate review." *People in Interest of A.W.R.*, 17 P.3d 192, 199 (Colo. App 2000). In any event, the claim would be moot because, at this stage, even if we were to conclude there was error, nothing we could do would change the temporary placement now that termination has occurred.

¶ 18 And we reject father's efforts to tie this placement decision to the ultimate outcome of the case — in an attempt to circumvent the rule that such orders are not subject to appellate review — by arguing that, but for the temporary placement decision, there *would have been* a less drastic alternative. First, hearings related to termination of parental rights are not custody hearings. *See A.M. v. A.C.*, 2013 CO 16, ¶ 26 ("[T]he termination hearing ought not become awash with unnecessary evidence or devolve into a contested custody hearing."). Second, the issue of where a child will be placed is distinct from whether a particular legal disposition would appropriately serve as a less drastic alternative to termination. *People in Interest of H.L.B.*, 2025 COA 86, ¶ 22 ("[A] less drastic alternative to termination is not dependent on a

particular out-of-home placement provider . . . ."); *see also People in Interest of A.R.*, 2012 COA 195M, ¶ 44 (distinguishing the less drastic alternative analysis from statutory placement preferences).

¶ 19     Indeed, father's contention that an allocation of parental responsibilities (APR) to paternal grandparents was a less drastic alternative to termination — or would have been but for the temporary placement decision — misapprehends the basis of the court's determination.  And reviewing that determination, we discern no error.

### A.     Relevant Law and Standard of Review

¶ 20     The juvenile court must consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶¶ 19, 40-41.  In considering less drastic alternatives, the court bases its decision on the best interest of the child, giving primary consideration to the child's physical, mental, and emotional needs.  § 19-3-604(3); *People in Interest of E.W.*, 2022 COA 12, ¶ 34.

¶ 21     A court may consider "various factors" including whether an ongoing relationship with the parent would be beneficial or detrimental to the child.  *A.R.*, ¶ 38.  This determination will be

9

influenced by a parent's fitness to care for the child's needs. *People in Interest of L.M.*, 2018 COA 57M, ¶ 27.

¶ 22 Even when a placement provider or potential placement provider is willing to enter into an APR with a parent, the court may properly determine that such an arrangement does not adequately meet the needs of the child. *See People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005) (permanent placement with a relative may not be a viable alternative if it doesn't provide adequate permanence or otherwise meet the child's needs); *A.M. v. T.M.*, ¶ 31 ("Primary consideration of the child's physical, mental, and emotional condition and needs requires more than a mere assessment of adequacy in order to satisfy the overall intent of the Children's Code."). Further, notwithstanding the possible existence of a less drastic alternative, if the court nevertheless determines that termination is in the child's best interests, it must reject the alternative and order termination. *A.M. v. T.M.*, ¶ 32.

¶ 23 We review a juvenile court's less drastic alternatives findings for clear error. *Id.* at ¶¶ 15, 44. If the court's findings are supported by the record, we are bound to affirm its decision. *Id.* at ¶ 49.

## B.    Analysis

¶ 24    The juvenile court "carefully considered the less drastic alternative" of a potential APR to the paternal grandparents.  To this end, the court found that the paternal grandparents were safe and appropriate caregivers who "demonstrated considerable ability in interacting with" the child.

¶ 25    But a less drastic alternative must be more than merely adequate and available; it must also be in the child's best interests. *Id.* at ¶ 37; *see also A.R.,* ¶ 41 ("[L]ong-term or permanent placement with a family member . . . , short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or otherwise meet a child's needs.").  Here, the juvenile court found that an APR to the paternal grandparents was "not the best option" and that termination of parental rights was in the child's best interests.

¶ 26    The juvenile court first found that the child had limited resilience and substantial difficulty coping with stress and change.  The juvenile court found that "even more than the average four-year-old child, [the child] needs long term guaranteed security and stability."  The therapist working with father and the child, an

11

expert in clinical social work and parent-infant relationships, opined that this child had a greater need for stability and consistency than a typical child of that age, and explained that, for this child, "little changes bring big, big stress." And an expert in psychology and parent-infant relationships who evaluated the child opined that the child struggled with change "to a pretty significant degree" and testified that the child "requires a relatively high level of stability and consistency."

¶ 27 The juvenile court next found that "the continued uncertainty and lack of permanency associated with an APR . . . would likely run the risk of exacerbating [the child]'s struggles with emotional dysregulation." In particular, the court found that "an ongoing relationship with respondent father is unfortunately not in [the child's] best interests." The court found that father was not fit and not likely to become fit within a reasonable time. The court found that father's "inconsistent engagement with [the child] has contributed to her regression, anxiety, and instability." The juvenile court credited testimony from the two experts on parent-infant relationships who testified that the child's development would likely

12

be harmed if father continued to show up inconsistently as he had for the four years of the dependency action.

¶ 28    Finally, the juvenile court found that the child needed security and stability that was only available to her through adoption. The juvenile court found that an APR could not provide the security and stability that the child required because it both "holds the possibility for significant changes to placement in the future" and "preserves the possibility of an ongoing relationship with respondent father." The court found "an APR with the [paternal] grandparents, despite their best efforts, would necessarily mean instability" for the child.

¶ 29    Notably, nothing in the juvenile court's findings suggests that these circumstances would be any different had the child been temporarily placed with paternal grandparents. And because the record supports the court's findings, we cannot disturb the juvenile

13

court's determination that there was no less drastic alternative to termination for this child.[2]

## IV. Ineffective Assistance of Counsel

¶ 30 Father also contends that his counsel provided ineffective assistance by failing to secure the testimony of the adoptive mother of the child's sibling. We conclude that father has not alleged sufficient facts to warrant further consideration of this claim.

¶ 31 A parent has a statutory right to the effective assistance of counsel in dependency and neglect proceedings. §§ 19-1-105(2), 19-3-202(1), C.R.S. 2025; *A.R. v. D.R.*, 2020 CO 10, ¶ 47. A parent may raise an ineffective assistance claim for the first time on appeal. *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

---

[2] While this appeal was pending, father filed a motion raising events that occurred after the juvenile court terminated father's parental rights, asserting that these events undercut the juvenile court's findings regarding the child's resilience. We note that any such after-occurring events are not relevant to our analysis, because we conduct our appellate review of a court's factual findings and exercise of discretion "by looking solely to the record that was before that court at the time it entered the order." *Bd. of Med. Exam'rs v. Duhon*, 867 P.2d 20, 23 (Colo. App. 1993), *aff'd*, 895 P.2d 143 (Colo. 1995).

¶ 32     To prevail on a claim of ineffective assistance of counsel, a parent must show that (1) counsel's performance was "outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984); *see A.R. v. D.R.*, ¶¶ 48, 60 (the *Strickland* standard applies to claims of ineffective assistance of counsel in dependency and neglect proceedings). "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 33     Applying this standard, we will remand a case for further factual findings only if the parent's allegations are "sufficiently specific to constitute a prima facie showing of ineffective assistance of counsel." *A.R. v. D.R.*, ¶ 63. If the allegations lack sufficient specificity or do not meet this standard, we may summarily deny the claim. *Id.*

¶ 34     Even assuming that trial counsel's representation fell below an objective standard of reasonableness, father fails to allege facts that, if proven, would demonstrate prejudice. *See C.B.*, ¶ 26. Specifically, father fails to allege facts that would demonstrate a

15

reasonable probability that, but for counsel's deficient performance or unprofessional errors, the outcome of the proceeding would have been different. *See A.R. v. D.R.*, ¶ 60.

¶ 35 Father claims that the adoptive mother would have provided testimony that "would have shown that the [child's placement providers] were far less committed or consistent in maintaining family ties and sibling contact than their testimony suggested." And he claims that the proposed testimony "might have led the court to conclude that placement with the paternal grandparents and an APR would have been in the child's best interests relative to termination of father's parental rights."

¶ 36 But the juvenile court's comprehensive judgment does not suggest the court placed much, if any, weight on the placement provider's commitment to maintaining ties between the child and her sibling. As noted, the court detailed three reasons for rejecting an APR as a less drastic alternative that met the child's needs: (1) the child had "limited resilience and continues to have difficulty coping with stress and change"; (2) "the continued uncertainly and lack of permanency associated with an APR . . . would likely run the risk of exacerbating [the child]'s struggles with emotional

dysregulation"; and (3) the child needed the security and stability that was only available through adoption. The expected testimony of the witness father claims was critical would have had no bearing on the dispositive factual basis of the juvenile court's assessment that an APR was not in the child's best interests. Because father fails to adequately allege prejudice, his ineffective assistance claim must fail.

## V. Disposition

¶ 37 The judgment is affirmed.

JUDGE HARRIS and JUDGE BROWN concur.